**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA *ex rel.*
JACQUELINE LAGAMBA,

                  Plaintiffs,

                  v.

DEBORAH M. GENNELLO; THE
GERSHEN GROUP LLC; MODERATE
INCOME MANAGEMENT CO. INC.;
COMMUNITY HAVEN SENIOR CITIZENS
HOUSING LTD.; MODERATE INCOME
MANAGEMENT CO. – COMMUNITY
HAVEN INC.,

                  Defendants.

Civil Action No. 19-16615 (MAS) (LHG)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Deborah M. Gennello ("Gennello"), The Gershen Group, LLC ("Gershen Group"), Moderate Income Management Co., Inc. ("MIMC"), Community Haven Senior Citizens Housing, Ltd. ("Community Haven"), and Moderate Income Management Co. – Community Haven Inc.'s ("MIMC - CHI") (collectively, "Defendants") Motion to Dismiss Plaintiff Jacqueline LaGamba's ("Relator" or "LaGamba" or "Plaintiff") Amended Complaint. (ECF No. 20.) Plaintiff opposed (ECF No. 21), and Defendants

replied (ECF No. 22).[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is granted.

## I. BACKGROUND[2]

Relator Jacqueline LaGamba is a resident of Community Haven, a senior citizens apartment building in Atlantic City, New Jersey. (Am. Compl. ¶¶ 1, 4(c).) Relator and her former husband, Henry LaGamba, lived in Community Haven #217 from 1999 until his death in 2019. (*Id.* ¶ 9.) According to Relator, Defendants Gershen Group, MIMC, Community Haven, and MIMC – CHI (collectively, the "Gershen Companies" or "Defendant Companies") are a group of business entities organized as a single enterprise dominated by and operated for the profit of the Gershen family, specifically Defendant Gennello and her brother Jonathan Gershen. (*Id.* ¶ 4.) Relator claims that:

> [t]he Gershen Companies consist of many distinct legal entities which operate as one common entity on a day-to-day basis. Employees are identified as working for different companies interchangeably, and the companies lack actual separate existence. The Gershen Companies are also centrally directed and managed. While each site has on-site staff and managers (and the company also has intermediary regional managers)[,] these managers are given limited local discretion. When problems arise, these managers generally lack the authority to address them. This was demonstrated to [Relator] as she would attempt to bring problems to the Community Haven managers['] attention, and was repeatedly told that Mrs. Gershen (originally Defendant Gennel[l]o's mother, Mildred, and later Defendant Gennello) would need to make that decision.

---

[1] Notwithstanding Defendants' argument that Plaintiff's Amended Complaint was untimely, (Defs.' Moving Br. 1 n.1, ECF No. 20-1), in light of Plaintiff's filing of an Amended Complaint (ECF No. 19), and based on the Court's inherent authority to control its docket, the Court treats Plaintiff's Amended Complaint as the operative pleading. Defendants' motion to dismiss Plaintiff's earlier filed complaint (ECF No. 16), accordingly, is denied as moot.

[2] For the purposes of deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court accepts as true the factual allegations of the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

(*Id.* ¶¶ 26–28.)

Each Defendant that owns a subsidized property has an individual associated contract for the subsidized property called a Housing Assistance Program Contract ("HAP Contract"). (*Id.* ¶ 13.) According to Plaintiff, under the terms of the HAP Contract, both the subsidized property owner and the Gershen Companies (as managing agent) bear joint responsibility for the subsidized properties following Department of Housing and Urban Development ("HUD") rules and regulations. (*Id.* ¶ 17.) They are both independently responsible for ensuring that their tenants qualify for subsidized housing in accordance with HUD's requirements. (*Id.* ¶ 22.)

To receive payment from HUD under the HAP Contract, each subsidized property separately submits a monthly application, commonly known as a "HAP Voucher." (*Id.* ¶ 18.) The HAP Voucher requires an "Owner's Certification" that the payments requested were calculated in accordance with HUD requirements, the information provided is "true and correct," and no payment was received for any unit beyond what the HAP Contract authorized or what was otherwise authorized by HUD guidelines. (*Id.* ¶ 20.) The HAP Voucher also includes the warning that HUD will prosecute false claims and statements, citing among other statutes the False Claims Act ("FCA"), 31 U.S.C. § 3729. (*Id.* ¶ 21.)

Relator claims that "[o]ver the last decade, Defendants have failed to adequately comply with the terms of their HAP Contract(s) and the corollary rules and regulations of HUD, despite certifying each month that they are doing so." (*Id.* ¶ 25.) In 2005, Relator was elected President of the Tenant's Association of Community Haven, and she requested space from Community Haven's management to store the Association's files. (*Id.* ¶ 30.) Ms. Georgette Eble, an employee at Community Haven, advised Relator that she should apply for a second apartment in Community Haven. (*Id.* ¶¶ 8, 32.) Relator thought Eble's advice seemed wrong, but Relator was assured that

3

having a second unit was within HUD rules. (*Id.* ¶ 33.) Then Relator and her ex-husband completed paperwork under the direction and supervision of Eble to apply for the second unit (#216) to be used as an office for the Tenant's Association. (*Id.* ¶ 34.) According to Relator, "Ms. Eble and other employees at Community Haven were explicitly aware that [Relator] intended to continue[] to reside in [her ex-husband's] apartment (Unit #217)." (*Id.*) Relator was also advised by Eble that she would need to pay for part of the new apartment, Unit #216. (*Id.* ¶ 35.) From 2005 until Relator's ex-husband's death on February 25, 2019, Community Haven management was aware that Relator continued to reside with her ex-husband in Unit #217 and that she used Unit # 216 primarily as an office. (*Id.* ¶¶ 36–37.) Community Haven billed HUD, Relator, and her ex-husband for their respective portions of the rent on both apartments. (*Id.*)

During her time as President of the Tenants' Association, Relator received multiple complaints about unauthorized people living in the building in violation of HUD guidelines. (*Id.* ¶¶ 38–40.) These complaints included allegations that: there were non-senior residents in the building; at least one Airbnb-style short-term rental operated out of the building; an unauthorized visitor lived as a resident; a "live-in aide" had substance abuse problems; family members of a "live-in aide" lived as residents; and residents of Unit #416, Surender and Leela Gupta, used Unit #517 as an extra unit. (*Id.* ¶¶ 40–44.) Upon her ex-husband's death in 2019, Relator was ordered by Eble to vacate Unit #217 and move into her office, Unit #216. (*Id.* ¶ 46.) According to Relator, "Community Haven management refused to return the entirety of [Relator's and her ex-husband's] $200 security deposit for Unit #217 [and] wrongfully charged her for a week's rent on #217. Therefore, she is still owed $73." (*Id.* ¶ 48.) After consulting with an attorney, Relator now brings a suit to both recover her security deposit and to secure damages under the FCA. (*Id.* ¶ 49.)

In Count 1, Relator alleges an FCA claim. (*Id.* ¶¶ 50–69.) Relator avers that the monthly HAP Vouchers submitted to HUD by Defendants constituted "'claim[s]' as a 'request or demand' for money 'presented to an officer, employee or agent of the United States'" under 31 U.S.C. § 3729(b)(2)(A). (*Id.* ¶ 54.) Relator believes that "[t]he information created and submitted by Defendants [] inflated subsidy payments based on 'false or fraudulent' information" pursuant to 31 U.S.C. § 3729(a)(1). (*Id.* ¶ 56.) According to Plaintiff, the false or fraudulent information and Owner's Certification of such information allegedly submitted by Defendants for their HAP Vouchers were "material" to the payment of subsidies owed by HUD within the definition of 31 U.S.C. § 3729(b)(4). (*Id.* ¶ 58.) Relator further contends that Defendants had "actual and/or constructive knowledge" of false or fraudulent information in HAP Vouchers and the certification of such information, and Defendants' conduct satisfies the "knowing" requirement under 31 U.S.C. § 3729(b)(1). (*Id.* ¶¶ 59–60.) In Count 2, Relator alleges a New Jersey Security Deposit Law claim pursuant to N.J.S.A. § 48:8-21.1 (*Id.* ¶¶ 70–74.)

II.     **LEGAL STANDARD**

The Court will apply the standards of review set forth in Federal Rules of Civil Procedure 12(b)(6) and 9(b) in addressing Defendants' motion to dismiss.[3]

A.     **Standard of Review Under Rule 12(b)(6)**

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most

---

[3] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

5

favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (citation and quotation marks omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Rule 12(b)(6) "prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation omitted).

6

B.  **Standard of Review Under Rule 9(b)**

Because FCA claims allege fraud, they are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story–that is, the who, what, when, where and how of the events at issue.'" *Id.* (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

III.  **DISCUSSION**

Here, Plaintiff has failed to state a viable FCA claim against all Defendants. Because Plaintiff cannot maintain an FCA claim, the Court declines to exercise supplemental jurisdiction over her New Jersey Security Deposit Law claim.

A.  **Relator Fails to State a Claim as to Gennello, the Gershen Group, MIMC, and MIMC-CHI**

First, Relator's FCA claims as to Gennello, the Gershen Group, MIMC and MIMC-CHI must meet the heightened pleading requirements of Rule 9(b) because FCA claims allege fraud. *Eastwick Coll.*, 657 F. App'x at 93 (citation omitted). In order to satisfy this requirement, Relator must provide essential background information such as the "who, what, when, where and how" with respect to each defendant. *See id.* (citation omitted); *see also Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (noting that "[p]leadings containing collectivized allegations against 'defendants' do not suffice. . . . A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud."). Here, Relator has not pleaded the "who, what, when, where and how" as to defendants Gennello, the Gershen Group, MIMC, or MIMC-CHI with respect to her FCA claims. For example, although the information provided by Defendants on the HAP

7

Vouchers was allegedly incorrect and Defendants allegedly provided erroneous information that inflated the amount of subsidy they received from HUD" (Am. Compl. ¶ 55), and although the Amended Complaint alleges a number of irregularities in the building, it fails to specify which, if any, of the enumerated irregularities were fraudulently reported to HUD. Additionally, Plaintiff fails to specify which of the Gershen Companies certified the supposedly fraudulent representations.

Second, to the extent that Relator attempts to hold the Gershen Companies liable under an alter ego theory, Relator has also failed to establish claims against them. Although Relator argues that Defendant Companies "lack actual separate existence" (Am. Compl. ¶ 26), Relator has failed to plead a prima facie case for corporate veil piercing. In the Third Circuit, courts are required to look at the following factors to determine whether it is appropriate to pierce the corporate veil: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001). Relator's pleadings, even liberally construed, fail to satisfy multiple elements that a court looks to when deciding whether to pierce the corporate veil. At best, Relator attempts to piece together arguments that Defendants failed to observe corporate formalities, and that the Gershen Companies are merely a façade for the operations of the dominant shareholders, namely Gennello and the Gershen family. (*See* Am. Compl. ¶¶ 4, 26–28.) Relator, however, has not provided any arguments as to whether the Gershen Companies were grossly undercapitalized at formation, or any other arguments

8

regarding Defendant Companies' financial situations so as to warrant the Court to pierce the corporate veil.

In Relator's opposition brief, she also argues that because Gennello centrally directs and manages the Gershen Companies' conduct, she should be liable under the FCA. (*See* Pl.'s Opp'n Br. 17, ECF No. 21.) Citing *Joe Hand Promotions, Inc. v. Wright*, 963 F. Supp. 2d 26, 28 (D.D.C. 2013), Relator argues that an "individual corporate officer may be held liable for a corporation's infringing acts under the FCA without veil piercing as long as the complaint establishes that the individual had a right and ability to supervise the violation, as well as an obvious and direct financial interest in the misconduct." (*Id.* (citation and internal quotation marks omitted).) As Defendants point out in their reply brief, however, the "FCA" in *Wright* refers to the Federal Communications Act, not the False Claims Act. (Defs.' Reply Br. 8, ECF No. 22.) Relator, therefore, has not provided viable arguments for establishing Defendant Gennello's liability under the FCA.

### B. Relator Fails to State A Claim as to Community Haven

Relator also fails to state a claim as to Community Haven because Relator fails to plead sufficient facts to establish a prima facie FCA case and fails to satisfy the heightened Rule 9(b) pleading standard. Here, Relator attempts to plead that Defendants "knowingly present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval" pursuant to 31 U.S.C. § 3729(a)(1)(A), "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" pursuant to 31 U.S.C. § 3729(a)(1)(B), or "conspired to commit a violation of subparagraph (A), [or] (B)[,]" pursuant to 31 U.S.C. § 3729 (a)(1)(C). (Pl.'s Opp'n Br. 5; *see also* Am. Compl. ¶¶ 61–63.) Defendants argue that Plaintiff has failed to plead the knowledge requirement under the FCA because Relator has only pleaded

9

Defendants' state of mind generally with conclusory allegations of knowledge. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 13–15, ECF No. 20-1.) Defendants' briefing does not address whether Relator has established falsity under the FCA. (*See generally id.*) In her opposition brief, Relator notes that Defendants do not dispute that her complaint alleges falsity. (Pl.'s Opp'n Br. 6.) The Court finds that Relator has not adequately pled the knowledge element under the FCA.

In her Amended Complaint, Relator states that she thought Eble's advice for her to apply for a second apartment in the building seemed wrong although she was assured that doing so was within HUD rules. (Am. Compl. ¶¶ 33–34.) Relator also alleges that another couple, Surender and Leela Gupta, have two units. (*Id.* ¶ 44.) Relator asserts that "she was assured that [having two units] was within HUD rules." (*Id.* ¶ 33.) Because Plaintiff did not reference the actual HUD rules in the Amended Complaint, the Court cannot find Plaintiff adequately pled that employees at Community Haven were knowingly providing false information to Relator. In addition, the Court will disregard additional facts Relator pled in her Opposition Brief alleging falsity because the Court should "not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)." *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (noting that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations and internal quotation marks omitted).

With respect to Relator's allegations that when she was President of the Tenants' Association, she received multiple complaints about unauthorized people living in the building in violation of HUD guidelines, (Am. Compl. ¶¶ 38–40), Relator has failed to plead these instances with sufficient specificity to satisfy the heightened pleading requirement of Rule 9(b). Specifically, Relator avers that non-senior citizens were observed living in the building; some units were used

as Airbnb-style rentals; a man let his partner live with him long term; a tenant's live-in aide had substance abuse problems; and another resident's live-in aide had her entire family move in. (*Id.* ¶¶ 40–43.) Relator has provided rough time frames for some of her allegations, such as "in summer 2018," and "[f]or a number of years until approximately 4–5 years ago." (*See id.*) Relator has not, however, provided these alleged violators' names, nor has she provided any facts as to which specific rules or regulations were allegedly violated. (*See id.*) Relator, therefore, has not satisfied the heightened pleading requirement under Rule 9(b) because she has not pled with particularity Defendant Community Haven's alleged fraud, nor its tenants' alleged violation of any rules or regulations. *See Eastwick Coll.*, 657 F. App'x at 93; *see also Naporano Iron & Metal Co.*, 79 F. Supp. 2d at 511. The Court will afford Plaintiff the opportunity to file a second amended complaint.

### C. The Court Declines to Exercise Supplemental Jurisdiction over Relator's New Jersey Security Deposit Law Claim

Regarding Relator's New Jersey Security Deposit Law claim for the return of an unrefunded $73 security deposit and related damages, (Am. Compl. ¶¶ 73–74), the Court declines to exercise supplemental jurisdiction over the state law claim because Relator's federal FCA claims are dismissed. "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendant state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted). Pendent jurisdiction, however, is a doctrine of discretion, not of plaintiff's right. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citation and quotation marks omitted). A federal court should consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Id.* "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine*

11

*Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). Here, because the Court has decided to dismiss Relator's federal FCA claims, the Court declines to exercise supplemental jurisdiction over her state law claims.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss, and will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] Should Plaintiff file a second amended complaint that satisfies Rules 8(a) and 9(b) and her FCA claim survive, the Court would then exercise supplemental jurisdiction over Relator's New Jersey Security Deposit Law claim.