<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JACQUELINE LAGAMBA, | |
| Plaintiff, | Civil Action No. 19-16615 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| JONATHAN S. GERSHEN *et al.*, | |
| Defendants. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on two motions by Defendants Community Haven Senior Citizens Housing Ltd. (the "Housing Company"), Georgette Eble ("Eble"), Moderate Income Management Co., Inc. (the "Management Company"), Mark C. Sheil ("Sheil"), and The Gershen Group LLC (the "Gershen Group," and collectively "Defendants"). The first is a Motion to Strike Eble and Sheil from Relator Jacqueline LaGamba's ("Jacqueline") Second Amended Complaint (ECF No. 30); the second is a Motion to Dismiss the Second Amended Complaint (ECF No. 31). Jacqueline opposed both motions (ECF No. 33), and Defendants replied (ECF Nos. 34, 35). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Defendants' Motion to Strike and grants in-part and denies in-part Defendants' Motion to Dismiss.

**I.      BACKGROUND**

This is a multi-year fraud case featuring a divorce, a death, and a dispute between landlord and tenant. The scene is an apartment building called Community Haven in Atlantic City, New Jersey. (Second Am. Compl. ¶ 4, ECF No. 29.) The actors are numerous: Relator is Jacqueline LaGamba, a tenant at Community Haven (*id.* ¶ 1); Eble is a manager at Community Haven employed by the Management Company (*id.* ¶ 5); Sheil is another manager but is employed by the Gershen Group (*id.* ¶¶ 3, 7).

The story begins in 1999 in Unit 217 at Community Haven. Community Haven is a multi-family apartment building that offers low-income senior citizens below-market rent. (*See id.* ¶¶ 12-13.) Jacqueline moved there with her ex-husband, Henry LaGamba ("Henry"), whom she divorced in 1984. (*Id.* ¶ 18 & n.1.) Although divorced for fifteen years, the LaGambas reconciled and "held themselves out to be a married couple" to those at Community Haven but never legally remarried. (*Id.*) Their marital status notwithstanding, the LaGambas were able to jointly apply for a low-income housing subsidy provided by the Department of Housing and Urban Development ("HUD") for Unit 217. (*See id.* ¶ 20.) HUD approved the joint subsidy without issue.

Things began to change in 2007, however. A vacancy cropped up in Unit 216, the apartment neighboring the LaGambas' unit. Enter Eble. A manager familiar with the LaGambas' relationship, Eble suggested to Jacqueline that she rent out Unit 216. (*Id.* ¶ 19.) As to why, Eble told Jacqueline that renting out a second unit would allow her to garner a second subsidy from HUD. (*Id.*) Eble also knew, however, that Jacqueline would not live in Unit 216 but instead would use the apartment for additional office space. (*Id.* ¶ 21.) No matter: "Eble advised [Jacqueline] that having two units was permitted under HUD rules." (*Id.* ¶ 22.)

Except it was not. Department regulations stated that tenants may receive subsidies for one unit only and that "[t]enants must not receive assistance for two units at the same time." (*Id.*

2

¶¶ 26-27.) That is significant because management at Community Haven had to submit vouchers to HUD certifying that Community Haven complied with Department regulations. (*Id.* ¶¶ 23-24, 33; *see also id.* Ex. B.) Nevertheless, the LaGambas trusted Eble's advice and began applying for subsidies for Units 216 and 217—Henry certified to Eble that "Wife moved into another unit," Jacqueline applied for a subsidy for Unit 216, and Henry applied for another subsidy for Unit 217. (*Id.* ¶¶ 30-31; *id.* Exs. A, I, J.) Eble signed off on Henry's certification, and Sheil signed off on the LaGambas' subsidy applications. (*Id.* ¶¶ 30, 39-40; *id.* Exs. A, I, J.) All told, the LaGambas collected subsidies from both units from April 2008 through 2019. (*Id.* ¶ 38.)

But then Henry passed away on February 25, 2019. (*Id.* ¶ 46.) Eble quickly ordered Jacqueline to vacate Unit 217 and move into Unit 216 by March 8, 2019—just eleven days after Henry's death. (*Id.* ¶ 47.) Because she did not live in Unit 216, however, Jacqueline protested with Eble to let her stay in Unit 217 and instead leave Unit 216. (*Id.*) But that was all for naught as Eble, who by now was attempting to force Jacqueline's hand, upped the rent for Unit 217 to the market rate. (*Id.* ¶ 48.) The tactic worked: Jacqueline departed from Unit 217 and moved next door. (*Id.* ¶ 51.) The move came with added controversy, as Community Haven refused to pay Jacqueline, a low-income senior citizen, $73 of her security deposit for Unit 217. (*Id.* ¶ 52.)

In the ensuing battle for her security deposit, Jacqueline discovered that Eble's decades-old advice about Department subsidies was wrong. (*Id.* ¶ 53.) She then sued (among others) the Gershen Group, the Management Company, and the Housing Company under the False Claims Act (the "Act") for that fraudulent advice, as well as under the New Jersey Security Deposit Law, N.J. Stat. Ann. § 46:8-21.1 *et seq.*, for the return of her $73 security deposit. (*See generally* Compl., ECF No. 1) Following an amendment, Defendants moved to dismiss Jacqueline's complaint, and the Court dismissed without prejudice. (ECF No. 27.) With leave of the Court, Jacqueline refiled

an amended complaint, adding Eble and Sheil as defendants. Defendants then answered with the present motions.

## II. LEGAL STANDARD

### A. Motion to Strike

Motions to strike under Federal Rule of Civil Procedure 12(f)[1] are disfavored. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014); *see also DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 597 (D.N.J. 2015). Motions to strike, therefore, will not be granted "unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). Nonetheless, the Court's determination on a motion to strike is discretionary. *Id.*; *see also Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 217 (D.N.J 1993) ("A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." (citation omitted)). "Motions to strike are decided on the pleadings alone." *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007). Because a motion to strike is disfavored, a court will generally not grant such a motion unless the material to be stricken bears "no possible relation to the controversy and may cause prejudice to one of the parties." *See id.* at 133.

### B. Motion to Dismiss

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a

---

[1] References to "Rule" hereafter refer to the Federal Rules of Civil Procedure.

three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.   DISCUSSION

Before the Court are twin motions from Defendants: one to strike Eble and Sheil from Jacqueline's Second Amended Complaint and another to dismiss that complaint altogether. The Court considers each in turn.

#### A.   The Court Denies Defendants' Motion to Strike.

The Court first considers Defendants' Motion to Strike Eble and Sheil from the Second Amended Complaint. Some background to help clarify what prompted this motion. On July 30, 2021, the Court dismissed without prejudice Jacqueline's claims against the Gershen Group, the Management Company, and the Housing Company. (*See* Order 1, ECF No. 28.) As is standard

5

with without-prejudice dismissals, the Court granted Jacqueline an opportunity to "file a Second Amended Complaint." (Order 2; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." (citation omitted)).) The Court did so without precondition. *See* Fed. R. Civ. P. 15(a)(2) ("[T]he court should freely give leave when justice so requires."). Nevertheless, Defendants assert that the Court should strike Eble and Sheil from the Second Amended Complaint because it exceeded the scope of the Court's leave and because Jacqueline should have filed a motion for leave to amend to add new parties (which, according to Defendants, would have been denied).

The Court begins by noting that Defendants' motion is procedurally strange. At bottom, the motion seeks to dismiss two parties from Jacqueline's Second Amended Complaint. But the plain text of Rule 12(f) provides no support for dismissing or striking new parties. *See* Fed. R. Civ. P. 12(f) (providing that courts may strike "insufficient defense[s]" or "redundant, immaterial, impertinent, or scandalous matter"). Nor do Defendants cite to any relevant case law for the Court to strike new parties. They attempt to cite to cases like *U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Market*, but those cases reinforce that courts may strike material that exceeds a court's limited grant of leave to amend—not that a court may strike new parties under Rule 12(f). 240 F.R.D. 149, 154 (D.N.J. 2007) (striking a newly added defendant where addition of new party went "far beyond the limited scope of amendment granted by [the] [j]udge"); *see also T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-4209, 2017 WL 11476192, at *2 (D.N.J. Jan. 17, 2017) ("A limited grant of leave to amend does not entitle Plaintiffs to amend the complaint outside the scope of that leave."). Indeed, the Court struggles to see the relevance of these cases

6

because it unambiguously gave Plaintiffs here unconditional leave to amend. (*See* Order 2 ("Plaintiff may file a Second Amended Complaint on or before August 30, 2021.").)[2]

Notwithstanding these procedural oddities, Defendants' motion fails to elucidate why the addition of Eble and Sheil is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). As stated above, striking parts of a pleading is a "drastic remedy" that is "viewed with disfavor by federal courts" and is "infrequently granted." Wright & Miller, Federal Practice and Procedure § 1380 (3d ed. 2022) (collecting cases). To meet this high burden, Defendants argue that "Relator has failed to plead any facts that would impose liability upon Eble or Sheil as individuals." (Defs.' Mot. to Strike Moving Br. 9, ECF No. 30-1.) But Rule 12(f) does not permit the Court "to dismiss part of a complaint for legal insufficiency." *Jordan v. Cicchi*, No. 10-4398, 2014 WL 2013385, at *1 (D.N.J. May 16, 2014) (citation omitted). Defendants also argue that Plaintiffs waited too long to add Eble and Sheil to this dispute and that Eble and Sheil will face prejudice through added legal costs. (Defs.' Mot. to Strike Moving Br. 10-11.) Defendants cite no law applying these reasons to a Rule 12(f) analysis, and the Court declines to do so here. To be sure, when courts address prejudice in a Rule 12(f) analysis, they often look to whether irrelevant material in a pleading will prejudice a party. *E.g.*, *Bloom v. Congregation Beth Shalom*, No. 13-1442, 2014 WL 356624, at *2-4 (W.D. Pa. Jan. 31, 2014) ("The movant must show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial." (citation omitted)). That

---

[2] Contrast that with Judge Walls's order granting limiting leave to amend in *T.J. McDermott Transportation Co.*, cited in Defendants' moving brief. *See* No. 14-4209 (D.N.J. June 7, 2016), ECF No. 97 ("Plaintiffs are granted leave to amend their complaint to specify the location of the activity alleged in that Count within 90 days of the date of this order.").

is far from the case here where Eble and Sheil are the centerpiece of the Second Amended Complaint's claims.

### B. The Court Grants In-Part and Denies In-Part Defendants' Motion to Dismiss.

The Court next turns to Defendants' Motion to Dismiss. It begins by noting that Defendants do not challenge the New Jersey Security Deposit Law on substantive grounds. (*See* Defs.' Mot. to Dismiss Moving Br. 26-27, ECF No. 31-1 (arguing that the Court should refuse to exercise supplemental jurisdiction over state-law claim).) Accordingly, the Court focuses on the Second Amended Complaint's claim under the False Claims Act. The last time the Court weighed in on that claim, it identified two relevant deficiencies. Regarding the Housing Company, Jacqueline failed to identify the "actual [Department] rules" that this Defendant violated such that it could have known about the fraud. (Mem. Op. 10, ECF No. 27.) Regarding the Gershen Group and the Management Company, Jacqueline failed to identify the role these Defendants played in the fraudulent scheme, including what these Defendants reported to HUD and which entity certified the fraudulent representations. (*Id.* at 7-9.) The question now is whether Jacqueline has alleged enough to correct these deficiencies. The short answer is that she has alleged enough against the Housing Company, Eble, and Sheil (collectively, the "Community Haven Defendants") but has not against the Gershen Group and the Management Company.

#### 1. The Community Haven Defendants

Starting with the Community Haven Defendants, to state a claim under the Act, Jacqueline's Second Amended Complaint must allege three elements: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004) (quoting *Hutchins v. Wilentz,*

8

*Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001)). The Second Amended Complaint alleges all three. *First*, it alleges that the Community Haven Defendants submitted false certifications to HUD regarding tenant eligibility for subsidies that in turn led HUD to pay out subsidies. (*E.g.*, Second Am. Compl. ¶¶ 59, 61, 65.) Specifically, it asserts that the Community Haven Defendants certified that each tenant's eligibility for the subsidy "was computed in accordance with [Department] regulations." (*Id.* ¶ 61.) *Second*, the Second Amended Complaint alleges that that certification was false because the LaGambas "were both receiving a [Department] subsidy on two individual units, even though they lived together in one unit and used the second as extra space." (*Id.* ¶ 62.) Convincingly, Jacqueline shored up her Second Amended Complaint with specific references to the Community Haven Defendants' "HUD Handbook," which outlines these Defendants' obligations under HUD regulations. (*E.g.*, *id.* ¶ 25 ("Assisted tenants must have only one residence and receive assistance only in that unit."); *id.* ¶ 26 ("A family is eligible for assistance only if the unit will be the family's only residence"); *id.* ¶ 27 ("Tenants must not receive assistance for two units at the same time.").) *Finally*, the Second Amended Complaint pleads enough facts showing that the Community Haven Defendants knew the claim was fraudulent. It alleges several times, for example, that Eble knew about HUD regulations but advised the LaGambas to claim subsidies for multiple units. (*E.g.*, *id.* ¶¶ 20-21, 24-25, 28.) It further alleges that both Eble and Sheil continued to certify that the LaGambas lived in separate units for years— even though they knew that to be untrue. (*E.g.*, *id.* ¶¶ 29-31 & Exs. A, I, J.)

Of course, the Second Amended Complaint must also comply with Rule 9(b). *See United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (applying Rule 9(b) to the Act). To comply, the Second Amended Complaint must allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who,

9

what, when, where, and how of the events at issue." *Id.* (quoting *United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)). It does:

- **Who?** Eble and Sheil, as agents of the Housing Company. (Second Am. Compl. ¶¶ 5, 7.)

- **What?** The Community Haven Defendants submitted false certifications to HUD that certified that they properly computed the amount of HUD subsidies. They did not because the forms included "double-subsidies" for the LaGambas. (*E.g.*, *id.* ¶¶ 29-33.)

- **When?** From April 2008 to March 2019. (*Id.* ¶ 40.)

- **Where?** Units 216 and 217 at Community Haven. (*E.g.*, *id.* ¶ 38.)

- **How?** Eble convinced the LaGambas to rent out two units and to certify that each spouse lived in a different unit. Eble and Sheil then certified the LaGambas' separate subsidy applications and filed false certifications with HUD. (*E.g.*, *id.* ¶¶ 19-24.)

Defendants resist this conclusion and contend that the Second Amended Complaint fails to adequately allege the falsity and scienter elements under the Act. But these arguments boil down to disagreements over the alleged facts, not the law. *See St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299 (3d Cir. 2020) ("[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." (citation omitted)). For example, Defendants contend that the subsidy applications attached to the Second Amended Complaint show that the Community Haven Defendants did not submit false certifications to HUD. (Defs.' Mot. to Dismiss Moving Br. 9-13.) According to Defendants, because the LaGambas had to certify that those subsidy applications were true, the applications "conclusively demonstrate that Relator's FCA claim is not plausible." (*Id.* at 12.) That factual argument, however, ignores the allegations that Eble instructed the LaGambas to fraudulently fill out the subsidy applications. (*See* Second Am. Compl. ¶ 22.) It also ignores that the Complaint alleges that Jacqueline used Unit 216

10

for office space, thereby causing Eble and Sheil to file false certifications with HUD. *See Schmidt*, 386 F.3d at 243 ("[A] false certification of compliance [with applicable law] creates liability [under the FCA] when certification is a prerequisite to obtaining a government benefit." (alterations in original) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996))).

Defendants' argument on scienter fares no better. Scienter under the Act requires allegations of Defendants' "'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard' of the truth or falsity of information in the defendant's claim to the government." *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007) (quoting 31 U.S.C. § 3729(b)). So, the question becomes does the Second Amended Complaint sufficiently allege that the Community Haven Defendants recklessly submitted fraudulent certifications to HUD? Defendants argue that the answer must be no because they relied on the LaGambas' certifications and because, at worst, they acted with negligence. (Defs.' Mot. to Dismiss Moving Br. 13-19.) But at this stage, taking all inferences in favor of Jacqueline, the answer is yes. Defendants gloss over the allegations substantiating that Eble and Sheil recklessly disregarded the illegality of both the LaGambas' actions and their certifications to HUD. For example, the Second Amended Complaint alleges that Eble—whose "primary dut[y] was to be "intimately familiar with [Department] rules"—told Jacqueline that "she could apply for a second subsidized unit." (Second Am. Compl. ¶¶ 19, 24.) It further alleges that both Eble and Sheil should have been suspicious of the LaGambas' subsidy applications given that the LaGambas held themselves out as spouses. (*See id.* ¶ 30 (alleging that Henry's certification that "Wife moved into another unit" should have raised red flags).) Indeed, the Second Amended Complaint alleges that Department regulations require that "[i]f an owner suspects that a tenant has inaccurately supplied or misrepresented information that

11

affects the tenant's rent or eligibility, the owner must investigate and document the tenant's statements and any conflicting information the owner has received." (*Id.* ¶ 35; *see also id.* ¶ 41 (alleging that Community Haven employees routinely inspected Units 216 and 217).) Although certainly not the strongest allegations of scienter, at this stage, the Court finds these sufficient for reckless disregard. *See Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156-57 (3d Cir. 2014) (siding with circuits that require "a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted'" (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009))); *cf. Bookwalter*, 946 F.3d at 176 ("Rule 9(b) does not require the relators to plead . . . the date, time, place, or content of every single allegedly false Medicare claim.")

### 2. The Gershen Group and the Management Company

The Court reaches the opposite conclusion regarding the Gershen Group and the Management Company. To recap, the Second Amended Complaint needs to allege the role these Defendants played in the fraudulent scheme to survive dismissal. But it fails to do so. Jacqueline's Second Amended Complaint does not allege that either the Gershen Group or the Management Company made the fraudulent certifications to HUD. (*See id.* ¶ 59 (alleging that the *Community Haven Defendants* sent vouchers to HUD).) In fact, the only connection both Defendants appear to have to this case is employing either Eble or Sheil. That fact alone, however, cannot satisfy Rule 9(b) pleading standards—as the Court cannot ascertain what role the Gershen Group or the Management Company played in the fraud. *See MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) ("When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." (citation omitted)); *United States v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 514 (E.D. Pa. 2016) ("Although relator alleges that these defendants have benefitted from [defendant] financially, that some of

12

these defendants have knowledge of [defendant's] practices and that some defendants have overlapping employees, managers or officers, such connections are too far removed to establish direct involvement in a scheme subject to FCA liability." (citations omitted)).

This is not the first time Jacqueline has failed to allege facts regarding these Defendants—in fact, she has not been able to allege sufficient facts against them in three tries now. The Court thus finds that any further amendment would be futile. *See Garner v. Nutter*, No. 15-1335, 2017 WL 1048362, at *2 (E.D. Pa. Mar. 20, 2017) (dismissing with prejudice where plaintiff "has not been able to set forth specific factual allegations . . . in three tries"). The Court accordingly dismisses with prejudice the claims against the Gershen Group and the Management Company.

## IV. CONCLUSION

The Court denies Defendants' Motion to Strike. It grants in-part and denies in-part Defendants' Motion to Dismiss. Specifically, it denies regarding the Housing Company, Eble, and Sheil; it grants regarding the Gershen Group and the Management Company. The Court further dismisses with prejudice the Second Amended Complaint's claims against the Gershen Group and the Management Company. It will issue an order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

13